UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

RENAE OUTAR,

    Plaintiffs,

v.

SENIOR NANNIES MANAGEMENT SERVICES,
L.L.C., a Florida limited liability company, SN HOME
HEALTHCARE, L.L.C., a Florida limited liability
company, BRETT FELDMAN, an individual, and
GARY LOFFREDO, an individual,

    Defendants.
_____/

## COMPLAINT

Plaintiff, Renae Outar ("Outar"), through her undersigned attorneys, files this Complaint against the Defendants, Senior Nannies Management Services, L.L.C., SN Home Healthcare, L.L.C., Brett Feldman, and Gary Loffredo (hereinafter, "Defendant"), and alleges:

### JURISDICTION AND VENUE

1. This suit is brought against the Defendant pursuant to 29 U.S.C. § 201 *et seq.* ("Fair Labor Standards Act" or "FLSA").

2. Jurisdiction is conferred upon this Court by:

    (a)    28 U.S.C. § 1331;

    (b)    28 U.S.C. § 1343; and

    (c)    29 U.S.C. § 216(b), which allows for a FLSA claim to be brought in any court of competent jurisdiction.

3. Venue is proper for the Southern District of Florida because:

(a) Outar was employed in the Southern District of Florida by the Defendant which at all material times conducted, and continues to conduct, business in Broward County, Florida; and

(b) Additionally, venue lies because the acts that gave rise to Plaintiff's claims occurred in the Southern District of Florida and because Defendant keeps an office for the transaction of its customary business in this district.

## CONDITIONS PRECEDENT/ADMINISTRATIVE EXHAUSTION

4. Plaintiff has complied with all conditions precedent in this case, or they have been waived.

## PARTIES

5. Outar resides within this judicial district and is a citizen of the State of Florida.

6. Defendant Senior Nannies Management Services, L.L.C. is a Florida limited liability company which, at all times material, conducted substantial and continuous business in this judicial district, and is subject to the laws of the State of Florida and the United States.

7. Defendant Brett Feldman is an individual, who at all material times, conducted and continues to conduct substantial business in this judicial district, and was at all times material the business entity Defendant's vice president of client services and business development who was in operational control over the business entity Defendant and had the power and authority to determine what employees would be paid, how they would be paid, whether they would be paid overtime, to hire and fire, and similar issues including power over the finances of the business entity.

8. Defendant Gary Loffredo is an individual, who at all material times, conducted and continues to conduct substantial business in this judicial district, and was at all times material the business entity Defendant's vice president of client services and business development who was in operational control over the business entity Defendant and had the power and authority to determine

what employees would be paid, how they would be paid, whether they would be paid overtime, to hire and fire, and similar issues including power over the finances of the business entity.

9. The business entity Defendant paid employees and paid Outar and has gross annual sales volume that greatly exceeds $500,000 annually, at least for years 2015-19. The corporate Defendant has two or more employees engaged in commerce, as they have two or more who handle, work on, and use goods or materials that have been moved in interstate commerce and/or manufactured outside the state of Florida. For example, in the South Florida location Defendants have at least 15 employees who use computers, computer software, office supplies, copiers which were manufactured outside the State of Florida (and thus have moved in interstate commerce), and use cars and vehicles that in turn use gasoline, which vehicles and gasoline were manufactured outside the State of Florida. Further, the corporate Defendant has a team of employees who communicate with vendors and insurance companies and other businesses via emails, texts, and the various employees made long distance phone calls and sent emails to individuals who reside out of the State of Florida regularly and recurrently to effectively communicate for the business to operate.

10. Additionally, Outar is entitled to individual coverage, as she regularly and recurrently made calls to businesses located outside the State of Florida and thus she participated in the actual movements of goods or services and commerce across state lines. The Defendant is in the business of providing certified nursing assistants and other healthcare workers to individuals who have insurance providing for such workers to be assigned to assist them with their health needs in their homes. The Defendant has numerous office workers that assist in this process, from those looking for new business, to managers, to customer service representatives who assign the healthcare workers to specific individuals, to the healthcare workers who perform the ultimate service.

11. The corporate Defendant is both an "employer" pursuant to 29 U.S.C. § 203(d) of the Fair Labor Standards Act, and so too are the individual Defendants. The corporate Defendant is an

"enterprise" pursuant to 29 U.S.C. § 203(r) of the Fair Labor Standards Act. The corporate Defendant is an enterprise "engaged in commerce" pursuant to 29 U.S.C. § 203(s) of the Fair Labor Standards Act. During all times relevant to this action, the corporate Defendant was an enterprise engaged in commerce as defined in 29 U.S.C. §§ 203(r) and 203(s).

12. Outar is an "employee" pursuant to 29 U.S.C. § 203(e)(1) of the Fair Labor Standards Act, and was an employee of the corporate Defendant directly, and an employee of the individual Defendants for purposes of the FLSA because they had day-to-day operational control over the business and had the power and authority and exercised that power and authority concerning how much to pay employees, whether to pay employees overtime, how to respond to an investigation by the Department of Labor, and hiring and firing decisions. Outar was an employee of both corporate Defendants because the Department of Labor's regulation clearly sets forth that both corporate entities found to be joint employers are jointly and severally liable under the FLSA, as follows:

> [i]f the facts establish that the employee is employed jointly by two or more employers, *i.e.*, that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purpose of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the Act, including overtime provisions . . . .

29 C.F.R. § 791.2(a) (2002). Senior Nannies Management Services, L.L.C. has the same managing members as SN Home Healthcare, Inc., and the same officers and directors, and the two entities are jointly running a business to place home health workers into the homes of insureds (or private-pay clients) who are entitled to or pay for that care. Outar received her paychecks from Senior Nannies Management Services, L.L.C., but when she worked her work benefited both entities.

13. Outar was a non-exempt employee of Defendant who was subject to the payroll practices and procedures described in Paragraphs 23, 24, and 25 below, and who worked in excess of forty (40) hours during one or more workweeks within three (3) years of the filing of this Complaint.

4

14. At all times pertinent to this Complaint, Defendant failed to comply with 29 U.S.C. §§ 201-219 in that Outar performed services for Defendant for which no provision was made to properly pay for those hours in which overtime was required to be paid, which requires the payment of wages at time and one-half for all hours worked in excess of forty (40) hours in each workweek.

## STATEMENT OF FACTS

15. Within the past three (3) years (December 9, 2016 to October 9, 2019), Outar worked for the Defendant performing duties as a customer care coordinator and as an intake coordinator.

16. Outar's duties included doing whatever task the Defendant instructed her to perform, which consisted largely of basic customer care coordinator tasks in which she would speak with holders of insurance policies who were in need of a certified nursing assistant or other healthcare worker to be assigned to their home, and then assigning that worker. Outar's job duties became complicated by the fact that the Defendant asked her, and then insisted when she refused to do so, to assign non-black CNAs and other healthcare workers to those insureds (and private pay) who requested that they be assigned a healthcare worker based on their color. Outar complained about this blatant discrimination on numerous occasions, including in writing, but the Defendants told her that it was part of their business, and to continue assigning works to insureds based on race and color. Outar's tasks also included being on call to answer phones on weekends and nights.

17. Outar did not have the ability to hire or fire anyone (nor did she hire or fire anyone), and she did not regularly and customarily direct the work of any employees, much less two or more full-time workers.

18. Outar was only given tasks that were designed to facilitate the selection and assignment of healthcare workers to households of insureds, such as the tasks described above, all of which consisted of regular, recurrent, and routine work that did not involve her exercising independent judgment and discretion on matters of significance.

19. Outar's primary duties were not management.

20. Outar did not have any authority to interview, select, and/or train employees. Outar did not have any authority to set and adjust the rates of pay and hours of work for any employees. Outar had no authority to direct the work of employees. Outar did not maintain production or sales records at all when she worked for the Defendant, nor did she use any such records to supervise or control any employee. In fact, Outar does not even know anything about the business's financing or financial success or failure. It was not her responsibility. Outar knows nothing about the sales numbers or figures, as that was not her responsibility, but rather the responsibility of someone else in higher management. Outar did not supervise any staff. Outar had absolutely no say concerning any of the costs. For example, concerning wages paid to employees, Outar had no say concerning what any particular employee would be paid, how many employees could work in the office, when, what hours they could work, whether their pay should be increased or decreased, as all of that was determined by the Defendants. Outar had no authority to spend any of the Defendant's money at all, and had no authority to authorize the payment of bills. Outar never opened any mail that came to the building for purposes of making any decision concerning the business with respect to that mail.

21. While Outar worked for the Defendants, she never appraised employees' productivity and/or efficiency for the purpose of recommending promotions or other changes in status. While Outar worked for the Defendants, she never handled employee complaints and grievances, as that was for the Defendants to do. Also, Outar never disciplined employees, nor did she have the power or authority to do that. Outar did not plan any work for any employee, as there was no work to plan. Outar never determined any techniques to be used by employees to do their job, as she could not tell a laborer how to fix anything. Outar never apportioned work among any employees, as there were no employees who reported to her to whom to apportion work. Outar

never determined the type of materials, supplies, machinery, equipment, or tools to be used by any employees, as the Defendants or the employees themselves decided all of that. Outar had no involvement in controlling the flow and distribution of materials or merchandise and supplies. Outar had nothing whatsoever to do with materials, merchandise, or supplies or their distribution. Outar had no involvement with respect to budgeting. Outar was not involved in reviewing any sort of financial documents or statements of the business, and she did not review any such documents, nor was Outar supposed to. Outar had no involvement in monitoring or implementing legal compliance measures. There were no legal issues that Outar had anything to do with in terms of deciding how they would be handled or dealt with while she worked for Defendant, nor did she have anything to do with paperwork concerning new employees or hires. Outar simply followed the well-established techniques and procedures with respect to her duties, all of which were repetitive, routine, and recurrent work.

22.  Outar did not do anything that could have resulted in financial losses for the Defendants. Outar did not perform work that was directly related to management or general business operations of Defendants or their customers, because Outar did not perform work directly related to assisting with the running or servicing of the business, but rather was engaging in production work (data process to keep books and other manual tasks). Outar also did not perform work directly related to the management or general business operations of the Defendants because Outar did not work in a functional area such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Rather, Outar was one more person looking to

perform production work the Defendants rely on so heavily, people to data process and handle journal entries.

23.     In the course of employment with Defendant, Outar worked the number of hours required of her, but were not paid time and one-half for all hours worked in excess of forty (40) during a workweek.

24.     Outar regularly worked in excess of forty (40) hours per workweek. The Department of Labor investigated the Defendant for overtime violations in 2019, including the caregivers, nurse registry (W-2'd caregivers) and agency (1099'd personnel). Rather than honestly inform the DoL that the personnel working customer care coordinator positions were working overtime hours without being properly paid time and one-half for those hours, the Defendant did everything to try to keep the customer care coordinator positions from speaking to the DoL, and actively concealed from the DoL that the customer care coordinator positions were individuals who worked overtime, were owed overtime, but were not paid overtime. For the past 3 years, Outar was paid a certain sum of money for the first 40 hours worked ($20.32/hr) and no monies for any hours worked that exceeded 40 in a workweek, but soon after starting working she was assigned to work through lunch without pay (Defendant had a one-half hour automatic lunch time deduction), increased hours in the evening (9:00 a.m. - 7:00 p.m.), and then on-call time (Sunday day 9 hrs., and then 2 nights out of the week with some variance). Outar's hours worked per week were 71 hours on average from 2016 to March 2019, with no pay for any hours or portions of hours worked that exceeded 40 in a workweek. Outar was also paid monthly bonuses, which increase the hourly rate she is owed for overtime ($400/mo.). Starting in or about March 2019, Outar's hours changed to less on-call, and she is working 8-16 hours of on-call per week rather than the 21 hours she worked per workweek from 2016 to March 2019. Defendant has paid some overtime for some overtime hours worked since March 2019 based on an excel spreadsheet based on the length of calls for on-call time which do not contain all of the hours

8

that Outar worked, but those overtime hours are paid at a wrong (too low) hourly rate because they do not factor in the monthly bonus payments to the hourly rate (which is a FLSA violation).

25. The Defendant is not going to have accurate records of hours worked, because it required hours worked off of the clock and/or kept no records of the hours worked by Outar. Outar received paychecks stating that the pay was to compensate her for her first 40 hours worked, with no compensation for any of the overtime hours worked.

26. Outar has retained the undersigned legal counsel to prosecute this action in their behalf, and have agreed to pay them a reasonable fee for their services.

27. Outar is entitled to their reasonable attorneys' fees for prosecuting this action, whether or not they are the prevailing party.

## COUNT I – RECOVERY OF OVERTIME COMPENSATION

28. Outar re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 27 above as though fully set forth.

29. Outar is entitled to be paid time and one-half for each hour worked in excess of forty (40) in each workweek.

30. By reason of the intentional, willful, and unlawful acts of Defendant, Outar has suffered damages, *e.g.*, back pay for overtime wages, liquidated damages, and compensatory damages, plus incurring costs and reasonable attorneys' fees.

31. As a result of the Defendant's willful violations of the Act, and the failure to pay overtime which was not in good faith, as discussed above, Outar is entitled to liquidated damages as provided in § 216 of the FLSA, and are entitled to recover damages for three (3) years.

WHEREFORE, for workweeks within three (3) years of the filing of this Complaint, Outar demands judgment against Defendants for the wages and overtime payments due her for the hours worked by her for which she has not been properly compensated (back pay), liquidated damages,

reasonable attorneys' fees and costs of suit, and for all proper relief including pre-judgment interest, and any further relief that the Court deems necessary.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated: ___October 9, 2019_____

                                        Glasser & Kleppin, P.A.
                                        8751 W. Broward Blvd.
                                        Suite 105
                                        Plantation, FL 33324
                                        Tel. (954) 424-1933
                                        Fax  (954) 474-7405
                                        E-mail: ckleppin@gkemploymentlaw.com

                                        By: __s/Chris Kleppin_____
                                            Chris Kleppin
                                            Fla. Bar No. 625485